# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER MARTINEZ**, on behalf of himself and others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**THE IFA GROUP, INC., and JOSEPH McOWEN,**<br><br>*Defendant.* | Case No. 2:19-cv-02247-JDW |

## MEMORANDUM

The parties to this case ask the Court to approve their proposed settlement pursuant to 29 U.S.C. § 216(b). The Court has reviewed the facts and the proposed settlement and concludes that it is fair and reasonable, and that counsel has made a sufficient showing for an award of attorneys' fees. However, the Court concludes that the broad release included in the proposed settlement agreement would frustrate the purpose of the Fair Labor Standards Act and must be narrowed.

## I. BACKGROUND

### A. Factual Allegations and Procedural History

Christopher Martinez alleges in his Complaint that he worked as a repossessor for The IFA Group ("IFA") from September 2016 through June 2018. IFA paid Martinez a piece-rate for each item of property he repossessed. When he was not repossessing vehicles, Martinez worked at IFA's lot in Pottstown, Pennsylvania between the hours of noon and 3 p.m. Martinez alleges that IFA's owner and President, Joseph McOwen, agreed to pay him $15/hour for every hour he worked at the lot.

Martinez claims in his Complaint that he regularly worked 75-80 hours per week, though he now concedes that he worked 65-70 hours per week. He also claims that IFA failed to pay him his agreed-upon wages for the hours he was at the lot. Martinez alleges that, based on a 65-70 hour workweek, he was entitled to unpaid overtime wages between $40,000 and $45,000.

After Martinez filed his Complaint, Defendants took the position that the motor carrier exemption in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(b)(1), bars Martinez's claims. Plaintiff's counsel concluded that the motor carrier exception might preclude Martinez's claims. Given that risk, the parties agreed to settle the case.

B.     The Settlement

Under the terms of the settlement, Defendants will pay a total of $35,000: Martinez receives $21,000; and Plaintiff's counsel receives $14,000. In the settlement, Martinez agrees to release IFA "from any and all charges, complaints, claims, and liabilities of any kind whatsoever, known or unknown, suspected or unsuspected … which Martinez at any time has, had or claimed to have against IFA regarding events that have occurred as of the date Martinez executes this Agreement." (ECF No. 10 at Ex. 1.) The settlement also includes a non-disparagement provision and choice of law and forum provisions, among other things.

Plaintiff's counsel asserts in the Motion that Scott Pollins spent 30 hours of time on this case, with a suggested rate of $495/hour, and Tashell Jenkins spent 35 hours on this case, with a suggested rate of $350/hour. Thus, in total, Plaintiff's counsel has $27,700 in fees, as well as approximately $600 in expenses. Plaintiff's counsel then suggests that they will lower their fees in order to effectuate the settlement here. The parties have not submitted any time records or other information that the Court can use to assess the claimed fees.

## II.     LEGAL STANDARD

Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours …." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  There are only two ways that parties can compromise claims under the FLSA:  (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a settlement that a district court approves pursuant to 29 U.S.C. § 216(b).  *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Kraus v. PA Fit II, LLC*, 155 F. Supp.3d 516, 522-23 (E.D. Pa. 2016) (courts in Third Circuit generally look to *Lynn's Food* decision for guidance).  In general, when parties present to the district court a proposed settlement, "the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions, rather than a mere waiver of statutory rights brought about by an employer's overreaching." *See Kraus*, 155 F. Supp.3d at 523 (quotations omitted).

A proposed settlement resolves a bona fide dispute where its terms reflect a reasonable compromise over issues, such as back wages, that are actually in dispute.  *See id.*  "A dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Flores v. Eagle Diner Corp.*, No. 2:18-CV-01206-AB, 2019 WL 3943355, at * 9 (E.D. Pa. Aug. 21, 2019) (quote omitted).  For a bona fide dispute to exist, there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented. *See id.* at 530.  If a bona fide dispute exists, courts conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee and (2) the agreement furthers the FLSA's implementation in the workplace.  *See, e.g., Kauffman v. U-Haul Int'l, Inc.*, No. 5:19-cv-0580, 2019 WL 1785453 (E.D. Pa. Apr. 24, 2019).

The FLSA provides that, in addition to any judgment awarded to the plaintiff, the Court "shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Court is required to "articulate" the basis for a fee award. *Kraus*, 155 F. Supp.3d at 534 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196, 198-99 (3d Cir. 2000)).

## III. ANALYSIS

### A. Approval of the Settlement

This case presents a bona fide dispute. Martinez has submitted a claim for back wages under the FLSA. The FLSA exempts from its overtime rules "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service …." 29 U.S.C. § 213(b)(1). Defendants take the position that Martinez falls within this exemption and that his FLSA claim will necessarily fail. The parties have not yet resolved that issue, which appears to present a mixed question of law and fact. Moreover, there appear to be factual disputes about exactly what type of work Martinez performed when he was at the lot, how many hours he worked there, and what agreement existed for his compensation there.

In addition, the Court concludes that the settlement is fair and reasonable for Martinez. In undertaking this analysis, district courts within the Third Circuit generally focus on the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which establishes evaluative criteria for the fairness of class action settlements. As relevant here, these include the complexity, expense, and likely duration of the settlement; the stage of the proceedings; the risks of establishing liability; the risks of establishing damages; the range of reasonableness of the settlement in light of the best possible recovery; and the range of reasonableness of the settlement in light of all the attendant risks of litigation. *See id.* at 157-58.

Here, Martinez's case is at an early stage, and will likely be costly to pursue in discovery, given the granular nature of the proof required. At the same time, Martinez has a claim for overtime wages between $40,000 and $45,000. He will therefore receive from the settlement about half of his claimed wages. That settlement reasonably accounts for the risk that he would receive nothing if Defendants were to prevail on their claim regarding the motor vehicle carrier exemption. Indeed, from an actuarial standpoint, Martinez's chances of success appear to stand at or slightly below 50/50, given the present state of the record.

Finally, the Court must determine whether the proposed settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace. *See Bettger v. Crossmark, Inc.*, Civ. A. No. 1:13-cv-2030, 2015 WL 279754, at *8 (M.D. Pa. Jan. 22, 2015). Generally, courts that have considered the issue have concluded that releases that preclude a plaintiff from raising "any and all" claims against his employer are too broad. *See, e.g., Kraus*, 155 F. Supp.3d at 532-33; *Bettenger*, 2015 WL 279754, at *9. The Court agrees that such a release goes too far.

The release here extends to any and all claims that Martinez has against the Defendants. The Court has no information concerning what claims Martinez might be releasing. Yet in evaluating the fairness and reasonableness of the settlement, the Court must know what claims are being released so that it can determine how much value Martinez is receiving for his FLSA claim. As things stand, the Court has no way to conduct that analysis.

District courts reviewing proposed FLSA settlements may require litigants to limit the scope of wavier and release provisions to claims related to the specific litigation in order to ensure equal bargaining power between the parties. *See Bettenger*, 2015 W 279754, at *8. The Court will do so here. Therefore, the Court will approve the settlement only to the extent that it releases

claims that a judgment in this case would bar under the doctrine of *res judicata*. Other claims not within that scope will not be released. The Court recognizes that such an approval alters the Parties' deal, and it will give the Parties seven days to opt out of their settlement in light of this change.

B. **Attorneys' Fees**

Courts in the Third Circuit generally use the percentage-of-recovery method to evaluate attorneys' fees requests in wage and hour cases like this one. *See Mabry v. Heldebrant*, Case No. 14-cv-5525, 2015 WL 5025810, at * 3 (E.D. Pa. Aug. 24, 2015). Courts in this Circuit have approved settlements that range from 20-45%. *See id.* (collecting cases). Here, Plaintiff's counsel seeks an award at the high end of that range—40%—for a case in which it took no discovery and engaged in no motions practice.

The Court finds that the high percentage is reasonable given the actual total recovery. While the percentage is high, the total amount that Plaintiff's counsel will receive is significantly less the lodestar crosscheck would have permitted. The lodestar crosscheck is performed by calculating the "lodestar multiplier," which is calculated by dividing the requested fee award by the lodestar. *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). Here, as the Parties explain in the Motion, Plaintiff's counsel's total lodestar is approximately $27,700. The fee award to Plaintiff's Counsel will be $14,000, meaning that the lodestar multiplier will be .505. Given the low multiplier, and the low total recovery in this case, the Court concludes that the $14,000 fee award is reasonable here.

IV. **CONCLUSION**

The Court will approve the settlement, with the release modified as described above. The Court will also approve the attorneys' fee award provided in the settlement. The parties shall have

seven (7) days from the date of this decision to inform the Court that they have opted out of the settlement in light of the changes that the Court has made to the scope of the release.

**BY THE COURT:**

Dated:  November 19, 2019

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.